UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL JOSE DE ALBA-PEDILLA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WESCO DISTRIBUTION INC., et al.,<br><br>Defendants. | Case No. 24-cv-03767-JD<br><br>**ORDER RE REMAND** |

Plaintiff Joel Jose De Alba-Padilla, on behalf of himself and a putative class of California employees, sued Wesco Distribution Inc. and others for a variety of wage and hour claims under California state law. *See* Dkt. No. 1, Exh. A (Complaint). The complaint was originally filed in California state court and was removed by Wesco to this Court under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d). Dkt. No. 1. Plaintiff asks to remand on the ground that Wesco has not demonstrated an amount in controversy exceeding the $5,000,000 threshold for CAFA jurisdiction. *See* Dkt. No. 9 at 4-14.

The Court has discussed in other cases the standards for establishing the amount in controversy for purposes of CAFA, and those discussions are incorporated here. *See Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1135-37 (N.D. Cal. 2020); *Moore v. Dnata US Inflight Catering LLC*, No. 20-cv-08028-JD, 2021 WL 3033577, at *1-2 (N.D. Cal. July 19, 2021). The parties' familiarity with the record is assumed, and the case is remanded.

Remand is warranted because Wesco relied on an unreasonable interpretation of the complaint in attempting to carry its burden of establishing the amount in controversy. *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 701-02 (9th Cir. 2020); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). In the notice of removal, Wesco assumed "a 100% violation rate"

to estimate the amount in controversy. Dkt. No. 1 at 9. But in opposition to the remand motion, Wesco applied what it characterized as "much more modest" assumptions. Dkt. No. 16 at 2. This modesty was said to be found in Wesco's revised assumption of a 20% violation rate for meal periods and rest breaks. *Id*. at 9. Using an assumed 20% violation rate, Wesco estimated the amount in controversy for meal periods to be $1,083,071. Wesco used the same violation rate for rest breaks to estimate another $1,083,071 in recovery, for a total of $2,166,142 for these claims. *Id*. at 17.[1]

To get across the CAFA threshold of $5 million, Wesco attempted to estimate the amounts for plaintiff's remaining claims, such as failure to pay wages, wage statement penalties, waiting time penalties, and other Labor Code violations. *Id*. at 17-18. Wesco expressly excluded attorney's fees in its estimate of the overall amount in controversy. *Id*. at 17.

For these claims, Wesco cast modesty aside and reverted to the assumption of a 100% violation rate. For example, with respect to unpaid wages, Wesco posited that each putative class member worked 30 minutes of every workweek for which they were not paid. *See id.* at 11.

The problem is that Wesco did not demonstrate that this assumption was a reasonable interpretation of the allegations in the complaint. The complaint states in virtually every substantive paragraph, including those for the unpaid wages claim, that Wesco had committed the alleged violations "at times" and for "some" of the putative class members. Complaint ¶¶ 14, 15, 16, 17, 18, 19, 20, 21. In effect, the complaint expressly alleged something less than a 100% violation rate for the claims against Wesco. Consequently, it is a bridge too far for Wesco to infer that every employee was unpaid every week for the entire time period relevant to the complaint. There is no support in the complaint for that assumption, and it cannot be squared with the plain language of the allegations. The only time a "consistent policy" is mentioned in the complaint is in connection with Wesco's handling of vacation days and health benefits, *see id.* ¶¶ 22-23, neither of which play any role in Wesco's estimate of the amount in controversy for CAFA purposes.

---

[1] These figures were based on data from Wesco's employment records, such as the number of non-exempt employees at issue, the average hourly pay rate, the total number of workweeks, and the total number of pay periods. *See* Dkt. No. 16-1 (Wesco Declaration). This data was perfectly appropriate for use here, and plaintiff's objections to the evidence, Dkt. No. 9-1, are overruled.

Wesco did not present any extrinsic evidence that might otherwise have justified its assumption of a 100% violation rate. *See* Dkt. No. 16-1.

This misinterpretation of the complaint knocks out $812,303 in recovery for unpaid wages from Wesco's overall estimate of the amount in controversy. *See* Dkt. No. 16 at 11, 17. An additional estimate of $921,850 for wage statement penalties is also off the table because, as Wesco acknowledges, "the wage statement claim is derivative of other class-wide allegations for failure to pay wages." *Id*. at 15.

The elimination of $1,734,153 in unpaid wages and penalties is fatal to Wesco's conclusion that the overall amount in controversy in this case is $5,568,738. Dkt. No. 16 at 17. Even if all of Wesco's other claim estimates were accepted without question, it posits only $3,834,585 as the amount in controversy, which is well short of the CAFA threshold. Although Wesco relinquished attorney's fees as part of its CAFA estimates, spotting it an additional 25% recovery in fees would amount to only $4,793,231.

Consequently, Wesco has not met its burden of demonstrating CAFA jurisdiction in this case. It is remanded to the Superior Court of California for the County of Contra Costa.

**IT IS SO ORDERED.**

Dated: March 31, 2025

_____
JAMES DONATO
United States District Judge